UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENNIS KEITH CLARK,

               Petitioner,

vs.                                    Case No.  2:07-cv-265-FtM-36DNF

SECRETARY, DOC and VICKIE LANGSFORD,
Warden, Hendry Correctional
Institution,

               Respondents.
_____

## OPINION AND ORDER

### I. Status

Petitioner Dennis Keith Clark (hereinafter "Petitioner" or "Clark"), proceeding with counsel, filed a Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on April 30, 2007.  The Petition challenges Clark's July 20, 2000 state court judgment of conviction and sentence for two counts of sexual battery on a child under twelve (12) years of age (counts 1 and 2), and one count of lewd fondling (count 3) entered in the Twentieth Judicial Circuit Court, Lee County, Florida.  Petition at 1-2.  The Petition raises three grounds for relief.  Grounds I and II assert claims of ineffective assistance of trial counsel, with multiple sub-claims, and ground III asserts a claim of ineffective assistance of appellate counsel.  *Id.* at 3-4.  Prior to Respondent filing a response to the Petition, Petitioner filed a motion to withdraw ground III.  *See* Petitioner's Motion for Leave to Withdraw

Ground III (Doc. #8, Motion).  The Court granted Petitioner's Motion and directed Respondent to file a response only as to Grounds I and II of the Petition.  *See* July 24, 2007 Order of Court (Doc. #10).  Thus, Petitioner seeks relief on the following eight grounds of ineffective assistance of trial counsel:[1]

**Ground I  (Petition at 6-7)**
Trial counsel was ineffective for failing to impeach the victim on cross examination and introduce the victim's prior deposition into evidence.

**Ground II-1  (Petition at 7-9)**
Trial counsel was ineffective in misadvising Petitioner of the law in connection with a plea offer by the State.

**Ground II-2  (Petitioner at 9-10)**
Trial counsel was ineffective for failing to ensure that the videotape of Petitioner's questioning by police was properly redacted.

**Ground II-3  (Petition at 11)**
Trial counsel was ineffective for failing to move to preclude the testimony of the child victim, the hearsay testimony of the grandmother, and hearsay testimony of Lawson, Gregory, and C. Tuning due to "brainwashing and coaching" by the grandmother.

**Ground II-4 (Petition at 12-14)**
Trial counsel was ineffective for failing to challenge the competency of the alleged victim before she was allowed to testify at trial or before the videotaped interview with Child Protective  Services was introduced at trial.

**Ground II-5 (Petition at 14-15)**
Trial counsel was ineffective for failing to challenge the victim's credibility on cross examination.

_____

[1]The Petition contains three labeled grounds: Ground I, Ground II, and Ground III.  Petition at 3-4.  As noted above, Petitioner withdrew Ground III, leaving Grounds I and II.  Ground II contains seven sub-claims alleging ineffective assistance of counsel.

**Ground II-6 (Petition at 15-17)**
Trial counsel was ineffective for failing to file a motion to keep the alleged perjured testimony of Mr. Gregory from evidence at trial.

**Ground II-7 (Petition at 17-19)**
Trial counsel was ineffective for failing to point out to the trial court that there was no corroboration as to any of the counts and that no confession or admission existed due to the victim recanting her testimony.

In accordance with the Court's Order to Show Cause (Doc. #7), as amended by the Court's July 24, 2007 Order (Doc. #10), Respondent filed a Response to the Petition (Doc. #12, Response). Respondent subsequently filed supporting exhibits (Exhs. 1-5), including a complete copy of the trial transcript (Exhs. 1, 3), and copy of the transcript from the evidentiary hearing held on Petitioner's Rule 3.850 motion (Doc. #19-1). Petitioner filed a Reply to Respondent's Response (Doc. #14, Reply). This matter is ripe for review.

## II. Procedural History

On retrial,[2] Clark was found guilty by jury of two counts of sexual battery (counts 1 and 2) and one count of lewd fondling

---

[2]Petitioner's initial conviction on the same charges was reversed on direct appeal. *Clark v. State*, 742 So. 2d 824 (Fla. 2d DCA 1999). The appellate court reversed and remanded for a new trial finding that Petitioner had been denied a fair trial, because the jury heard testimony that Petitioner was on probation at the time that the allegations arose in the present case. Petitioner stated he was on probation to detectives during his tape-recorded interview, which was played for the jury. Petitioner's comment about being on probation was not redacted from Petitioner's tape-recorded statement during the first trial. As more fully discussed *infra*, the statement regarding Petitioner being on probation was redacted in Petitioner's second trial.

(count 3).   Exh. 1-C at 302.   The court sentenced Clark to two concurrent life sentences on counts 1 and 2, and a concurrent ten year term of imprisonment on count 3.   *Id.* at 303-316.   On May 18, 2001, the appellate court *per curiam* affirmed Clark's conviction and sentence.   *Clark v. State*, 790 So. 2d 413 (Fla. 2d DCA 2001); Exh. 2.

Clark, represented by counsel, filed a timely motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising eleven (11) grounds of ineffective assistance of trial counsel  ("Rule 3.850 motion").[3]   Exh. 3-B at 6-43.   The State filed a response, attaching portions of the record in support.   *Id.* at 47-200, Exh. 3-C at 201-400, Exh. 3-D at 401-600.   On December 12, 2002, the postconviction court, referencing to and incorporating by reference the State's response and exhibits, summarily denied Clark's Rule 3.850 motion.   Exh. 3-E at 848-1003, Exh. 3-F at 1004-1168.   On appeal, the appellate court affirmed in part, and reversed to the limited extent that the appellate court remanded back to the trial court for a limited evidentiary hearing on the sole issue of whether trial counsel rendered ineffective assistance concerning the State's plea offer. *Clark v. State,* 855 So. 2d 691 (Fla. 2d DCA 2003); Exh. 3-A.

---

[3]The Court notes that Petitioner filed a Rule 3.800 motion, which although relevant for tolling purposes, is not relevant to the claims raised in the instant Petition.

On April 26, 2005, the postconviction trial court held an evidentiary hearing on Clark's claim that trial counsel was ineffective when advising Clark on the state's plea offer. Exh. 4-G at 1195. On April 29, 2005, the postconviction court entered an order denying this final issue of ineffective assistance of trial counsel. Exh. 4-G at 1196-97. Represented by counsel, Petitioner appealed the denial of this claim. Exh. 4-A. The State filed a response. *Id.* On August 25, 2006, the appellate court *per curiam* affirmed the postconviction trial court's April 29, 2005 order, denying Petitioner relief on this final claim. *Id.* Petitioner then filed a petition seeking certiorari review in the United States Supreme Court, which was denied. Exh. 5.

### III.  Applicable § 2254 Law

Clark filed his timely[4] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1664 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the federal court's review is "greatly circumscribed and is highly deferential to the state courts." *Alston v. Fla. Dept' of Corr.*, ___ F.3d ___, 2010 WL

---

[4]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent submits that the Petition is timely filed. Response at 8. The Court agrees.

2680366 * 6 (11th Cir. July 8, 2010); *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007).  Essentially, AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### Deference to State Court Decision

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision.  *See, e.g.*, *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson*, 527 F.3d at 1146.

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d, 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003)

(citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, *i.e.*, "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, *i.e.*, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688; *see also Bobby Van Hook*, 558 U.S. ___, 130 S. Ct. 13, 16 (2009). Thus, a habeas court's review of a claim under the *Strickland* standard is "doubley

-8-

deferential." *Knowles v. Mirzayanze*, ___ U.S. ___, 129 S.Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).   In demonstrating counsel's deficiency, it is the petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.*  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

"To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury."  *Berghuis v. Thompkins*, ___U.S. ___, 130 S.ct. 2250, 2265 (2010)(quoting *Strickland*, 466 U.S. at 695).

### IV.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, *Chandler v. McDonough*, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  *Schriro*, 127 S. Ct. at 1940.

Respondent acknowledges, and the Court agrees, that each of the grounds raised in the instant Petition are exhausted, as they were raised in Petitioner's Rule 3.850 motion and in the appeals of the denial therefrom.  Response at 8.

-10-

**Factual Evidence**

The female child victim, M.T., lived in ths same apartment complex as Petitioner and was four and one-half years old at the time of the offense, which occurred between April 1, 1993 through April 30, 1993.  Exh. 1 at 1.  In 1996, prior to Petitioner's first trial, the trial court held a pretrial hearing concerning the admissibility of the child victim's hearsay statements made to Barbara Lawson, the Case Coordinator for the Child Protection Team, Michael Gregory, the Child Protective Investigator, and Cynthia Tuning, the child's mother.  At the conclusion of hearings, the trial court found the child victim's statements to Ms. Lawson, Mr. Gregory and Ms. Tuning to be admissible.  *Id.* at 5-55, 56-89. Prior to the second trial in July 2000, the State filed an Amended Notice of State's Intention to Introduce Hearsay Statements of M.T. made to Ms. Lawson, Mr. Gregory and Ms. Tuning, previously deemed admissible in the first trial, and additionally sought to introduce M.T.'s statements made to Vivian Dunham, M.T.'s foster grandmother. *Id.* at 105-132.  Over defense counsel's objection, the trial court ruled that its prior rulings on the admissibility of M.T.'s statements to Mrs. Lawson, Mr. Gregory and Ms. Tuning would stand. *Id.* at 139-140.  At the conclusion of the hearing, the trial court ruled that M.T.'s statements to Ms. Dunham were also admissible. *Id.* at 157.

###   Grounds I, II-4, II-5, II-7

Although raised as four separate claims, Grounds I, II-4, II-5, and II-7 all concern defense counsel's cross-examination and/or treatment of the child victim. *See generally* Petition. Petitioner submits, without any evidentiary foundation, that the State "coached the alleged victim into testifying that she did not remember what had transpired on the night in question." *Id.* at 6. Petitioner also contends that the child victim "recanted" the allegations she initially made against Petitioner in her deposition. *Id.* Based upon these unsupported factual allegations, Petitioner faults counsel for: failing to impeach the child victim with her earlier recantation and failing to introduce the child victim's deposition into evidence (ground I, Petition at 3, 6); failing to challenge the competency of the child victim before she was allowed to testify at trial or during the videotaped interview with Child Protective Services (ground II-4, Petition at 11-14); failing to challenge the child victim's credibility on cross-examination (ground II-5, Petition at 14-15); and, failing to argue that the child had recanted her testimony, resulting in Petitioner being convicted only on uncorroborated hearsay.  In denying each of the grounds raised by Petitioner in his Rule 3.850 motion, the State postconviction held as follows:

> 3.   The Defendant raises four grounds regarding the cross-examination of the victim in the case.  He asserts ineffective assistance of counsel for failing to impeach the victim with a recanted deposition, failing to challenge the victim's competency, failing to impeach the

victim's credibility, and failing to argue that the
victim recanted.  Transcripts of the trial and the
cross-examination of the victim are attached to the
State's Response.  The State notes, and this Court will
reiterate, that the cross-examination involved the
questioning of an 11 year old child about a deposition
she gave when she was 8 years old about events which
occurred when she was 4 ½ years old.  The transcripts of
the cross-examination refute each of the Defendant's
allegations as set forth in the State's Response.

Exh. 3-E at 848-49.  As to these four grounds set forth above, the

State postconviction court in summarily denying these grounds found

that Petitioner was not entitled to an evidentiary hearing on these

grounds because the record refuted each of Petitioner's claims.

The court emphasized that as a result of the retrial, the victim,

who was now 11 years old, could no longer recall the testimony she

had given at her deposition taken when she was eight-years of age,

or recall the specific events that transpired when she was four and

one-half years old.

The Court finds that the State court's adjudication of these

four grounds was not contrary to or an unreasonable application of

clearly established federal law or based on an unreasonable

determination of the facts.  Independent review of the record

confirms that the State court's findings are firmly supported by

the record.

In particular, contrary to Petitioner's claim that counsel

failed to impeach the child victim, or challenge the child-victim's

credibility on cross examination, the trial transcript reflects

that defense counsel clearly attempted to conduct a vigorous cross-

examination of the child by continually referring the child to her deposition testimony given three years earlier, but the child victim testified that she could not recall the testimony she previously gave at her deposition. Exh. 1-D at 59-66. In fact, at one point, the trial court requested defense counsel to approach at side bar to advise counsel that the victim "doesn't have any recollection," to which counsel explained to the court "that's what my client wants me to do." *Id.* at 60-61. Thus, counsel attempted to impeach the child victim on cross examination, but the child simply could not remember her previous deposition testimony. During cross examination of M.T., defense counsel read into evidence, her relevant deposition testimony. *Id.* Thus, even if counsel had moved to have the child victim's deposition moved into evidence, the jury would not have been permitted to view the child victim's testimony during deliberations. *See Young v. State*, 645 So. 2d 965, 966-967 (Fla. 1994); Florida Rule of Criminal Procedure 3.400(a)(4).

Similarly, the record conclusively reveals that counsel had no basis to challenge the competency of the child victim. In determining whether a child is competent to testify under Florida law, the court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child can narrate the facts to the court or a jury, and (3) whether the child has a moral sense of the obligation to tell the truth. *In re G.S.* 898, So. 2d 1282, 1283 (Fla. 2d DCA 2008)((*citing Griffin v. State*, 526

So. 2d 752, 753 (Fla. 1st DCA 1988)(*citing Lloyd v. State*, 524 So. 2d 396, 400 (Fla. 1988)).

As pointed out above, the State court held a pretrial hearing on July 1, 1996. Exh. 1-A at 5-55. During the hearing, the court directly questioned M.T. (at age seven), and concluded that the child "witness is capable and competent to testify." *Id.* at 14. M.T. knew she was in second grade and knew the name of the school she attended. M.T. was able to demonstrate that she knew the difference between a lie and the truth and stated she goes to church. Further, M.T. explained that God "doesn't like lies" and, if you lie, "you go down there," where there is the "devil." *Id.* at 12-13. She also stated that it is "better if you tell the truth." *Id.* at 15. Also, M.T. knew the difference between real and fake, recognizing that she is a real girl, but Mickey Mouse is not a real mouse. *Id.* at 15-16. The court states "I don't have any questions in my mind [that] this witness [M.T.] is capable and competent to testify, and the court so rules. *Id.* at 18.

Prior to ruling on M.T.'s competency, the court extensively questioned M.T., as did the State prosecutor. The child victim testified and demonstrated that she knew the difference between the truth and a lie, understood it was better to tell the truth, had a moral sense that lying was wrong, and could distinguish between reality and fantasy.

Similarly, at trial, the prosecutor asked M.T. a number of questions. *See generally* Exh. 1-D at 48-50. Further, M.T. was

sworn in to testify at trial. *Id.* at 48. M.T. testified that she understood the oath she had just taken, stated that if a person lies in court they "go to the devil," and agreed to only tell the jury the truth. *Id.* at 49-50.

The record also conclusively establishes that defense counsel cross examined Ms. Lawson and objected as to M.T.'s competency at the May 9, 2000 pretrial hearing concerning the admissibility of M.T.'s videotaped interview with Ms. Lawson. *See generally* Exh. 1-B; *Id.* at 266-280. Thus, Petitioner's contention that counsel was deficient for failing to object to the admission of the child victim's videotaped interview with Ms. Lawson is irrefutably contradicted by the record.

Additionally, the record establishes that the child victim was articulate and responsive to the court, the prosecutor, and defense counsel's questions. Indeed, it is unclear from the record on what basis defense counsel should have continued to object to M.T.'s competency at trial. Even if defense counsel had challenged the child victim's competency or credibility, there has been no showing that the trial court would have granted the motion. In fact, it is clear from the trial court's comments made at side bar that the motion would have been futile. To the extent that Petitioner disagrees with the State court's evidentiary rulings, such claims, which are properly raised as a claim of trial court error and not as an ineffective assistance of counsel claim, are matters of state law for which habeas relief does not lie.

Finally, Petitioner argues that counsel was ineffective for failing to argue that the child victim recanted her testimony. However, Petitioner fails to point out where in the record the victim disavowed the acts for which Petitioner was charged and convicted. *See generally* Petition. Admittedly, M.T. had difficulty on the stand specifically recalling the details of the incidents that occurred seven years earlier and for which she was deposed three years earlier. Exh. 1-D at 50-59. A victim's lack of recollection of an incident, however, does not equate to a victim's repudiation of the incident. M.T. did not testify that the incidents did not occur. While M.T. recalled general events involving Petitioner at his apartment - - playing the "Princess" game where M.T. was to pretend she had died and Petitioner would carry her to the bedroom, lie her on the bed, and kiss her on her lips to make her come back alive – -or seeing "white stuff" on Petitioner's penis - - she did not have specific recollection of other events.

> Q:   Okay, Did you touch [Petitioner's penis] with any other part of your body that you remember?
>
> A:   No, I can't remember.
>
> Q:   Okay.  Do you remember whether or not any part of [Petitioner] ever touched your private part?
>
> A:   I cannot remember.

*Id*. at 57, lines 8-13. Also, during M.T.'s cross-examination, M.T. testified she did not recall or remember any of her testimony from her August 1996 deposition. *Id.* at 62-66. Therefore, counsel

cannot be deemed ineffective for failing to argue or proffer a position wholly unsupported by the evidence.

Further, the record refutes Petitioner's assertion that counsel failed to argue that he was being convicted on only uncorroborated hearsay. In addition to renewing at trial his objections to Petitioner's tape-recorded statement being played based on the grounds which he raised at the evidentiary hearing, counsel also objected to Petitioner's tape recorded statement "based on lack of corpus in this case. Only thing we have is the child saying she doesn't remember anything, everything else is hearsay." Exh. 1-E at 270, lines 16-19. The trial court overruled defense counsel's objection. *Id.*, lines 20-21. Additionally, defense counsel moved for a judgment of acquittal at the close of the prosecution's case. *Id.* at 325. The record unequivocally reflects that defense counsel argued that "you can't base a conviction essentially just on hearsay, unless there's some corroboration. This is all corroborated by hearsay." *Id.*, lines 20-23; *see also Id.* at 326. Thus, the record belies Petitioner's assertion that counsel failed to argue this point. Indeed, defense counsel strenuously argued this point in moving for acquittal, which was denied by the trial court.

Based upon the foregoing, the Court finds that the record conclusively refutes the grounds set forth at I, II-4, II-5 and II-7. Thus, the Court denies Petitioner relief on each of these grounds.

### Ground II-1

Petitioner submits that defense counsel was ineffective when he misadvised Petitioner of the State's plea offer. Petition at 7-9. Petitioner states that, "immediately before his retrial," defense counsel advised him that the State was offering him a plea deal, wherein he would plea to attempted sexual battery and would receive a sentence of ten years incarceration, followed by ten years probation. *Id*. at 7. Petitioner asserts that defense counsel incorrectly advised him that he would not be eligible for gain time if he accepted the plea, due to the enactment of the Jimmy Ryce Act,[5] which stated that "A person who is convicted of committing a sexual battery on or after October 1, 1992, is not eligible for basic gain-time under § 944.275." *Id*. Further, Petitioner contends that defense counsel failed to determine "how much time he was facing for violating his federal probation." *Id.* Petitioner states that "but for the misadvise of his defense counsel, he would have accepted the plea and avoided a trial and the real possibility of a life sentence." *Id.*

Petitioner raised a similar issue in his Rule 3.850 motion, and after appeal, was granted an evidentiary hearing. A copy of the evidentiary hearing was submitted in paper format with the

---

[5]The Jimmy Ryce Act, is codified at Florida Statute § 394.910 *et. seq.* (2009). "In Chapter 99-222, Section 1, Laws of Florida, the Legislature removed reference to 'Jimmy Ryce' in the title of the act." In re Fla. R. Civ. P. for Involuntary Commitment of Sexually Violent Predators, 13 So.3d 1025, 1025 n. 1 (Fla. 2009).

Respondent's Supplemental Notice of Filing Exhibits (Doc. #19,

E.H.).   The State postconviction court, after remand and

evidentiary hearing, held as follows:

> 2.   At the evidentiary hearing, trial counsel for the
> Defendant testified that the Defendant in discussing a
> plea deal with the State raised a question regarding a
> recently passed law in 1992 that took away basic 1/3 off
> gain time for sexual battery convictions.  The Defendant
> was unsure whether this new law would apply to him and
> asked counsel to research the matter.  Counsel testified
> that he did not immediately know the answer, but he
> researched the issue and determined that the new law
> would not apply to the Defendant if he entered a plea to
> attempted sexual battery and that he would be entitled to
> gain time.  Counsel conveyed this information to the
> Defendant, and the Defendant ultimately elected to reject
> any plea offer and proceeded to trial.
>
> 3.   The Defendant testified that he raised the question
> of gain time under a plea to counsel, but that his
> attorney never gave him a definite answer to the
> question, but informed him that he probably would not be
> given gain time under the new statute. Defendant
> testified that with this advice from counsel, he elected
> not to accept the plea, but that if he had been properly
> informed as to the correct law, he would have taken the
> plea.
>
> 4.   Defendant's brother also testified as to the state
> of mind of the Defendant.  The brother testified that
> Defendant spoke to him on the phone and was not going to
> take a plea if he was ineligible for gain time.
>
> 5.   Reviewing this conflicting testimony, the court
> finds that the testimony of the trial attorney is
> credible and the testimony of the Defendant is not
> credible.  On this basis the court finds that counsel did
> advise the Defendant that he would be eligible for gain
> time if he accepted a plea, and that Defendant rejected
> the plea offer.  Consequently, the Defendant's motion for
> postconviction relief is DENIED.

Exh. 4-G at 1196-1197.

The Court concludes, from a review of the record, that the State court's adjudication of this ground was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.   In the present case, the State court heard testimony from Petitioner, Mr. Cerino, Petitioner's defense counsel, and Petitioner's brother.

Arguably, conflicting testimony was presented at the evidentiary hearing held by the State postconviction court. Although Mr. Cerino was unclear of the time frame, he specifically recalled having a conversation with Petitioner before the start of trial and telling him that he would be eligible for gain time if he accepted the State's offer because he was pleading to "attempted" sexual battery.  E.H. at 15.

> I made no promises as to how much gain time he would get, I can't do that, it's between him and the Department of Corrections, but I did tell him you are not ineligible for gain time based on that statute.

*Id.* at 16.  Mr. Cerino remembered that there was "a lot of plea offers being thrown around" and could not "remember if it ever got as good as ten years," but "it did get good that I recommeded him taking it."  *Id.* at 16.  Mr. Cerino "remember[ed] distinctly" telling Petitioner that he was eligible for gain time.

> But after he had been convicted - - we ended up going to trial, he rejected all plea offers, we went to trial. After that he summoned me to the jail, wrote a letter asking me to come to the jail, which I did, and he had a list of things he said I was deficient in, and I don't remember everything on the list except this one thing where he said, "You told me I'm ineligible for gain time," and I remember it because it made me angry,

> because, I mean that's definitely untrue and I believe I
> said to Mr. Clark, "You know I came back and told you
> differently," and he just stared at me and continued
> reading his list.   And that's how I have a clear
> recollection.

*Id.* at 16-17.   Mr. Cerino further stated that he was not qualified
to render an opinion about whether Petitioner's conviction would
affect his Federal probation and did not recall giving any advice
regarding the same.   *Id.* at 19-20.   Finally, Mr. Cerino testified
that he was unable to persuade the State not to pursue a Jimmy Ryce
commitment during the plea negotiations.   *Id.* at 18.

Petitioner's brother, Steven, testified that Petitioner "was
getting ready for his second trial" and called him to tell him that
the State had offered him a plea.   *Id.* at 17.   During the
conversation, Petitioner stated that he did not "think he was going
to be eligible for gain time."   *Id.* at 24.

Petitioner testified that trial counsel told him that "Jimmy
Ryce would apply," and Petitioner "would not be eligible for one-
third off," *i.e.* gain time.   *Id.* at 25.   Further, trial counsel was
unable to tell Petitioner what, if any, effect a State conviction
would have on Petitioner's federal probation.   *Id.*   Petitioner was
permitted to introduce the list that he wrote "as soon as the trial
was over," and which he had asked Mr. Cerino to sign   *Id.* at 35.
Petitioner asked Mr. Cerino to acknowledge the following:

> When the State offered a plea agreement to Mr. Clark for
> 17 years' prison time followed by 17 years of probation,
> I told Mr. Clark that because he was going to plead
> guilty to attempted capital battery he would not be
> eligible for one-third off of his sentence.

*Id.* at 36.   Petitioner admitted that defense counsel "didn't sign it." *Id.*

The Supreme Court has long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Hill,* 474 U.S. at 57, 6; see also *Richardson,* 397 U.S. at 770-771. "The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." *Rolling v. Crosby,* 438 F.3d 1296, 1301 (11th Cir. 2006)(citing 28 U.S.C. § 2254(e)(1)).

Here, the State postconviction court credited trial counsel's testimony.   Petitioner has not presented clear and convincing evidence establishing that the State court's credibility finding was incorrect. *See Rolling,* 438 F.3d at 1301. Notably, Petitioner testified during the evidentiary hearing that he had ascertained by the conclusion of his trial that he was eligible for gain time if he pled to the attempted sexual battery charge.   Petitioner, however, does not specify from what source he allegedly learned that he was eligible for gain time, if not from his defense counsel.   Further, counsel and Petitioner both agreed that the State would not waive future commitment under the Jimmy Ryce Act. Petitioner does not fault counsel with giving him incorrect advice about the impact his plea would have on his federal probation, instead Petitioner objects that counsel gave him no advice.

Counsel did not deny that he did not offer any advice.  In fact, counsel acknowledged he was not qualified to offer any advice in this area.  Based upon the foregoing, Petitioner has failed to establish that he is entitled to habeas relief under § 2254 on this ground.

**Ground II-2**

Next, Petitioner asserts trial counsel "failed to review the redacted video interview of Petitioner by police before allowing the jury to view it."  Petition at 9.  Petitioner argues that, during trial, defense counsel moved to have the videotape redacted to exclude any reference to Petitioner "being shot in the leg," but failed to review the tape before it was played for the jury.  *Id.* at 10.  As a result, Petitioner claims that the tape was edited in such a manner, "which falsely represented that Petitioner was a horney, sexual deviate with a serious case of the 'blue balls.'"  *Id.*  Petitioner does not argue that the reference to him "being shot in the leg" was not redacted.  The State court denied this ground finding:

> 5. Defendant claims counsel was ineffective for failing to object to redacted video.  As noted by the State, the videotape was redacted in the Defendant's second trial at his request after the first conviction was reversed on appeal because the videotape was admitted at the first trial without redacting and included references to prior arrests of the Defendant and that he was presently on probation.  The State correctly sets forth the argument in its Response that the Defendant cannot complain that counsel was ineffective for allowing the presentation of a redacted video when the redaction was mandated by the District Court on remand for retrial.

Exh. 3-E at 849.

Upon review of the record, the Court finds that the State court's adjudication of this ground was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. The tape was redacted to eliminate Petitioner's admission to detectives that he was on probation. Even if the parties had agreed to additional redactions, whether counsel viewed the redacted tape is irrelevant because the record reveals that trial counsel did in fact object to the admission of the redacted videotaped interview of Petitioner in its entirety. Exh. 1-E at 270. Further, contrary to Petitioner's contention, counsel did lodge an objection when the prosecutor attempted to elicit testimony concerning the portion of the tape at which the redaction occurred, which was sustained by the court. *Id*. at 322. Additionally, the trial court explained to the jury prior to playing the videotape that portions of the tape were redacted. *Id*. at 269. Consequently, the Court finds Petitioner has failed to demonstrate that counsel was deficient and he is not entitled to relief on this ground.

### **Ground II-3**

Petitioner faults counsel for failing to move "to preclude the testimony of the victim, the hearsay testimony of the grandmother and the hearsay testimony of Lawson, Gregory and Cynthia Tuning based on the brainwashing and coaching of the grandmother before

[,] during [,] and after initiation of the charges in this case." Petition at 11.   Petitioner contends that he was "ultimately convicted" on these "tainted hearsay statements."   *Id*.   In summarily denying this ground, the postconviction court ruled:

> 6.  The Defendant claims counsel was ineffective for failing to object to hearsay testimony.   The State's Response contains a record of the trial transcript in which the hearsay testimony was presented *in camera* to the Court and authorized.   This issue was also addressed on direct appeal, where the District Court found no error. This issue was fully litigated and the Defendant cannot claim counsel was ineffective.

Exh. 3-E at 849.

At the outset, Petitioner provides no proof to support his conclusory allegations that M.T.'s grandmother exerted any undue influence on any of the witnesses.   Nor does the Court find any support anywhere in the record.   Further, as referenced above, during the pretrial hearings the trial court determined, based upon the evidence and testimony presented, that M.T.'s statements made to each of the witnesses were admissible pursuant to Florida Statute, Section 90.803(23).[6]   Petitioner wholly fails to

---

[6]Section 90.803(23) states:

(23) HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM.

(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed

(continued...)

demonstrate why the statements should not have been admissible. Thus, counsel cannot be deemed ineffective for failing to object to testimony without any foundational basis.

---

[6](...continued)

in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:

1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and

2. The child either:

a. Testifies; or

b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).

(b) In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the child's statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.

(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.

Finally, the record conclusively establishes that counsel did object to the court's rulings in the first trial concerning the admissibility of M.T's hearsay statements, which was denied by the trial court. Exh. 3-F at 139-140. Further, counsel objected and argued against the admission of M.T.'s hearsay statements made to her grandmother, which was also rejected by the trial court. *Id.* at 151-152. The fact that counsel was not successful in his efforts to have the hearsay testimony excluded does not rise to ineffectiveness.

Based upon the foregoing, the Court finds that the State court's adjudication of this ground was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. Consequently, the Court denies Petitioner relief on this ground.

### **Ground II-6**

In his last ground for relief, Petitioner submits that trial counsel was ineffective for failing to move to prohibit perjured testimony by Mr. Gregory. Petition at 16-17. According to Petitioner, Mr. Gregory's "official report" indicates that he first spoke with M.T.'s grandmother, Ms. Dunham, prior to meeting with M.T., the child-victim. *Id.* at 15-16. Petitioner further submits that the report states that Ms. Dunham told Mr. Gregory about the

"candy game,"[7] not the child-victim. *Id.* At his deposition, Mr. Gregory testified that M.T. told him about the candy game. *Id*. at 16. At trial, Mr. Gregory testified, consistent with his deposition testimony, that M.T. told him about the candy game, and that he did not talk with M.T.'s grandmother, Ms. Dunham, until after he spoke with M.T. *Id*.

The postconviction court, in denying this claim, states as follows:

> 7. The Defendant finally complains that counsel was ineffective for failing to object to the testimony of witness Michael Gregory. The State's Response contains detailed excerpts from the trial transcript demonstrating that counsel did adequately attempt to impeach the testimony of Mr. Gregory, and there was no deficient performance of counsel here.

Exh. 3-E at 849.

The trial transcript confirms that the postconviction trial court's conclusion was not erroneous. Defense counsel objected to Mr. Gregory testifying as to any staments made to him by M.T. on direct examination, which the court overruled. Exh. 1-D at 118, lines 14-15, 16-17. Also, defense counsel twice objected to Mr. Gregory testifying as to statements made by M.T.'s mother to Mr. Gregory on direct examination, and the trial court sustained that objection. *Id*. at 123, 125. Further, during cross examination

---

[7]According to the testimony, the candy game was described by M.T. as her licking Petitioner's "pee pee" and candy coming out. Exh. 1-A at 143. M.T. further described that she did not like the candy and described it as "yucky" and "ugly" and stated that it fell on Petitioner's "tummy." *Id*. at 144.

defense counsel attempted to use Mr. Gregory's notes to impeach his testimony that M.T. had told him about the candy game. *Id*. at 127-131.   In fact, defense counsel explicitly confronted Mr. Gregory about the inconsistencies between his dictated notes and his deposition and trial testimony:

> Q:   In your training, in your experience, you aware of what the law is on how these cases are tried, correct?
>
> A:   Yes.
>
> Q:   Okay, and you are aware of the hearsay laws that applies to child testimony; are you not?
>
> A:   Yes
>
> . . .
>
> Q:   And you know that direct hearsay from a child to you could be admissible in a court of law, right?
>
> A:   Yes.
>
> Q:   However, a story told by the child to somebody else and then to you would be inadmissible; is that correct?
>
> A:   I believe that would be correct.
>
> Q:   So what you -- isn't it true then that you have changed your story, where this story came from, so that it would be admitted today in court?
>
> . . .
>
> Q:   Look at this entire dictated report and tell me where it is that Megan told you these things.   It's nowhere in there, is it?
>
> A:   No.

*Id*. at 129-131.   Here, it is clear that defense counsel did object to certain testimony by Mr. Gregory, and explicitly challenged Mr.

Gregory about the inconsistencies between his report and his deposition and trial testimony. The record manifestly refutes Petitioner's claim. Thus, the Court finds that the State court's adjudication of this ground was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts, and denied Petitioner relief on this ground.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

2.    The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and, close this file.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 19th day of August, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record